IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KIYEL TYQUELLO KEARNEY,<br>    a/k/a "KhiGlock,"<br>    a/k/a "Glock,"<br><br>Defendant. | Case No. 1:23-mj-242 |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Matthew Hopkins, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with ATF and have been since January 2016.  During the course of my participation in law enforcement, I have conducted arrests and executed search and seizure warrants and court orders.  I have investigated crimes involving firearms, drug trafficking, and other matters.  I have received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, search and seizure, and asset forfeiture, and in gang, organized crime, money laundering, firearms, and drug investigations.

2.      My training has also included instruction on investigative tools and criminal law, such as the development and identification of probable cause to support the execution of arrest warrants, together with specialized training in the investigation of local, state, and federal crimes involving the trafficking of firearms.  I successfully completed the Criminal Investigator Training Program, instructed by the Federal Law Enforcement Training Center ("FLETC"), and the Special

1

Agent Basic Training, instructed by the ATF National Academy, both located in Glynco, Georgia. I have also successfully completed numerous training programs hosted by ATF, FLETC, and other local/state/federal law enforcement agencies and organizations.

3.     Prior to ATF, I was a sworn Police Officer with the United States Park Police in Washington, D.C., from May 2010 until January 2016.  I successfully completed the Uniformed Police Training Program, instructed by FLETC, and the Agency Specific Basic training program for the U.S. Park Police.

4.     I am an "[i]nvestigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for violations of federal law.  As an ATF Special Agent, I am authorized to execute warrants issued under the authority of the United States.

5.     I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents to include business and official government records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.  Because this affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue an arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that violations of the federal laws identified have occurred.

6.     I make this affidavit in support of an application for a criminal complaint and arrest warrant for KIYEL TYQUELLO KEARNEY, a/k/a "KhiGlock," a/k/a "Glock" (hereinafter, "KEARNEY").  For the reasons set forth below, I submit that there is probable cause to believe

2

that KEARNEY has violated 18 U.S.C. § 922(g)(1), unlawful possession of ammunition by a person who has been convicted of a crime punishable by a term of imprisonment exceeding one year.

**PROBABLE CAUSE**

7.      On April 13, 2023, KEARNEY was convicted in Maryland state court of a crime punishable by a term of imprisonment exceeding one year.  Just three weeks later, on May 3, 2023, KEARNEY purchased two packages of firearm ammunition, at a store in Arlington, Virginia, within the Eastern District of Virginia.  KEARNEY fled from police when they attempted to stop him after this purchase.  Surveillance footage, an itemized purchase receipt, data from KEARNEY's iPhone, and other evidence confirm that KEARNEY knowingly purchased ammunition on this date, in violation of federal law.

I.      **Kearney's Purchase and Flight from Police**

8.      On May 3, 2023, an officer of the Arlington County Police Department ("ACPD") observed two individuals park a black 2015 Dodge Charger in the vicinity of a federal firearms licensee in Arlington, called NOVA Armory.  NOVA Armory is located at 2607 Wilson Boulevard, Arlington, Virginia, within the Eastern District of Virginia.

9.      The black 2015 Dodge Charger had a rear, temporary Virginia license plate numbered B62683.

10.     The two individuals were described as African American males, one with longer hair, wearing all black and a dark winter jacket ("Suspect-1"), and the other with shorter hair, wearing a brown sweatshirt and black pants ("Suspect-2").

11.     Officers observed the two individuals enter NOVA Armory, exit a few minutes later, and walk back toward the black 2015 Dodge Charger.  After exiting the store, one of the individuals, Suspect-1, was carrying a white plastic bag that he had not been carrying earlier.

12.     Officers observed that the Dodge Charger was missing a front license plate, had darkly tinted windows, and had an expired registration, in violation of Virginia law.  An officer also observed the car make a right turn at a red light, in violation of a "no-turn-on-red" sign.

13.     An officer pulled his police cruiser behind the Dodge Charger and activated his siren and lights, in an attempt to conduct a stop of the Dodge Charger.

14.     In response, the Dodge Charger accelerated to a high rate of speed, fleeing from the attempted traffic stop.  The Dodge Charger continued fleeing through downtown Arlington, speeding through pedestrians and traffic, as multiple officers attempted to pursue it.

15.     Officers were unable to apprehend the fleeing Dodge Charger.

## II.     Kearney's Appearance in Surveillance Footage

16.     Following the vehicle's escape, officers canvassed the area, obtaining surveillance footage from NOVA Armory and another, nearby store (a cannabis dispensary).

17.     The surveillance from NOVA Armory shows two individuals who match Suspect-1's and Suspect-2's descriptions entering the store and speaking to a store employee.  While speaking with the two suspects, the store employee takes two small boxes off a shelf and brings them to the store's register.  Suspect-1 then provides payment to the employee, who places the boxes in a white, plastic bag.  The employee hands the bag to Suspect-1, and the two suspects then exit the store.

18.     The surveillance from the cannabis dispensary shows a car, matching the description of the Dodge Charger, parking across the street from the dispensary.  A person,

4

matching the description of Suspect-1, then exits the Dodge Charger from the driver's seat and walks away from the vehicle.  He is then joined by a person matching the description of Suspect-2.  A few minutes later, these two individuals return to the car.  The person matching the description of Suspect-1 is carrying a white, plastic bag that he was not carrying earlier.  The person matching the description of Suspect-1 enters the vehicle through the driver's seat, and the person matching the description of Suspect-2 enters through the front passenger's seat.  The vehicle then drives away.

19.     ACPD officers reviewed this surveillance footage and determined that it shows the same two individuals they saw exit the Dodge Charger and enter NOVA Armory.

20.     Through a review of the registration of the Dodge Charger and other investigative measures, ACPD officers determined the owner of the vehicle to be a relative of KEARNEY.

21.     Officers obtained a prior booking photograph of KEARNEY, compared it to the surveillance footage, and positively identified KEARNEY as Suspect-1, the driver of the Dodge Charger and the purchaser of the items from NOVA Armory.

22.     I have also reviewed the booking photo of KEARNEY and compared it to the surveillance footage.  I also conclude that they identify KEARNEY as Suspect-1.  The booking photo and an image from the surveillance are shown below:

**Kearney's Booking Photo and Image from NOVA Armory Surveillance**

 

### III.   Kearney's Purchase Receipt

23.     ACPD officers recovered from NOVA Armory a receipt documenting KEARNEY's purchase on May 3, 2023.

24.     The receipt shows a purchase of two packages of 7.62x39mm firearm ammunition, one manufactured by Igman d.d. Konjic and the other manufactured by PMC Ammunition, Inc.

25.     The timestamp on the receipt matches, within 30 seconds, the timestamp of the point in the NOVA Armory surveillance footage at which KEARNEY made his purchase of the two packages.

26.     The surveillance footage shows that no other person made any purchases at NOVA Armory during, or in the minutes before or after, the time that KEARNEY made his purchase.

### IV.   The Interstate Nexus of the Ammunition Kearney Purchased

27.     The receipt from NOVA Armory indicates the manufacturer, model, and caliber of the ammunition that KEARNEY purchased.  NOVA Armory, at a later date, allowed an ACPD officer to photograph packages of the same types of ammunition, as part of ACPD's investigation.

6

28.     This officer photographed both the ammunition packages and the rounds contained inside them.  An ATF interstate nexus expert reviewed these photographs and concluded that the packages were manufactured outside of the state of Virginia, meaning that they had traveled in and affected interstate commerce.  He also concluded that the rounds inside the packages were "ammunition" within the meaning of federal law.

## V.     Kearney's Text Messages

29.     Following KEARNEY's purchase of ammunition and flight from police, Arlington authorities obtained a warrant for his arrest, on Virginia felony charges of eluding police.  Local authorities found and apprehended KEARNEY on or around May 12, 2023, in Washington, D.C.

30.     During a search incident to KEARNEY's arrest, police found and seized an Apple iPhone from his person.  I obtained a search warrant for a review of the iPhone from the United States District Court for the District of Columbia.

31.     My review of the iPhone's contents indicates that in the days leading up to May 3, 2023, KEARNEY exchanged text messages with another person about the possibility of purchasing ammunition from stores in Virginia.

32.     On May 1, 2023, specifically, KEARNEY texted that he was "[t]ryna go to va to dis gun store."  KEARNEY asked this other person to accompany him.

33.     KEARNEY and this other person then discussed different firearms stores that they could visit in the area.  KEARNEY suggested a store near Suitland, Maryland, but he then changed the location because, he said, "law might go to datt joint."

34.     KEARNEY sent this other person a screenshot of a Google Maps entry for NOVA Armory.  Two days later, on May 3, 2023, KEARNEY provided NOVA Armory's address

("2607 Wilson Blvd, Arlington, VA 22201").  After some discussion, KEARNEY offered to drive this other person to NOVA Armory.

## VI.    Kearney's Vehicle

35.    During the search incident to KEARNEY's arrest, authorities also found a set of vehicle key fobs on his person.  Using the key fobs, the authorities discovered that the keys linked to a black 2015 Dodge Charger, bearing the rear temporary Virginia license plate B62683, which was parked nearby.  As discussed above, this is the same vehicle that KEARNEY used to drive to NOVA Armory and subsequently flee from police.

## VII.    Kearney's Prior Conviction

36.    I have reviewed certain public records relating to KEARNEY's criminal history. These records indicate that on April 13, 2023, KEARNEY was convicted in the Circuit Court of Prince George's County, Maryland, for unlawful possession of a loaded handgun in a vehicle, in violation of Md. Code Ann., Crim. Law § 4-203(a)(1)(v).

37.    The version of Md. Code Ann., Crim. Law § 4-203 that was in effect at the time of KEARNEY's conviction provides that KEARNEY's offense was a misdemeanor under Maryland law.[1]  It indicates that the maximum penalty for KEARNEY's offense was, at the time of his offense, 3 years of imprisonment and a fine of $2,500.[2]

---

[1] Under Maryland law, "misdemeanors" may carry terms of imprisonment of greater than one year.

[2] Since the time of KEARNEY's offense, his statute of conviction has been amended to increase the maximum penalty for the offense.  Were KEARNEY to commit and be convicted of this offense today, he would be subject to a maximum term of imprisonment of 5 years (rather than 3 years).  *Compare* Md. Code Ann., Crim. Law § 4-203(c)(2)(i) (effective Oct. 1, 2023), *with id.* (effective Oct. 1, 2018 to Sept. 30, 2023).

38.     Numerous documents in KEARNEY's court records, including a waiver of rights form that KEARNEY signed, indicate that KEARNEY was informed during this time of the maximum penalty for this offense.

39.     On April 13, 2023, KEARNEY entered a guilty plea to this offense and was sentenced to a term of imprisonment of 2 years, with all but 122 days suspended.  He was also sentenced to a term of supervised probation of 1 year.

40.     A document in KEARNEY's court records, entitled "Probation/Supervision Order," informed KEARNEY of the sentence being imposed, stating, in shorthand at the top of the form, "2 years suspend all but 122 days."  KEARNEY signed this form.

41.     A statement of probable cause that accompanied these charges also indicates that the car that KEARNEY was driving when he was apprehended for the Maryland offense was the same vehicle that he used to purchase ammunition from NOVA Armory.  The vehicle is described in the statement of probable cause as a "heavily tinted black Dodge Charger with no front license plate" bearing "Virginia Temporary rear tag B62683."

## CONCLUSION

42.     Based on the foregoing, there is probable cause to believe that on or around May 3, 2023 in Arlington County, Virginia, within the Eastern District of Virginia, KIYEL TYQUELLO KEARNEY, a/k/a "KhiGlock," a/k/a "Glock," did knowingly possess ammunition in or affecting commerce, and did knowingly receive the same after it was shipped or transported in interstate or foreign commerce, all after having been convicted of a crime punishable by a term of imprisonment of more than one year, in violation of 18 U.S.C. § 922(g)(1).

Respectfully submitted,

*M. Hop*                    MATTHEW HOPKINS
                            2023.11.08 13:52:26 -05'00'

Matthew Hopkins
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Respectfully submitted and attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on November 9, 2023.

Lindsey Vaala    Digitally signed by Lindsey Vaala
                 Date: 2023.11.09 14:47:49 -05'00'

The Honorable Lindsey R. Vaala
United States Magistrate Judge
Alexandria, Virginia

10